UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN E. FIELDS,<br><br>       Plaintiff,<br><br>  vs.<br><br>P. PATTERSON, et al.,<br><br>       Defendants. | 1:10-cv-01700-LJO-GSA-PC<br><br>ORDER FINDING COGNIZABLE CLAIMS<br><br>ORDER FOR PLAINTIFF TO EITHER:<br><br>(1)  FILE A SECOND AMENDED COMPLAINT, OR<br><br>(2)  NOTIFY THE COURT OF HIS WILLINGNESS TO PROCEED AGAINST DEFENDANTS PATTERSON, MOLINA, AND FINLEY ON THE CLAIMS FOUND COGNIZABLE BY THE COURT<br><br>THIRTY DAY DEADLINE TO FILE SECOND AMENDED COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED |

**I.    BACKGROUND**

Kevin E. Fields ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis with this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the Complaint commencing this action on September 17, 2010. (Doc. 1.)

The court screened the Complaint pursuant to 28 U.S.C. 1915A and entered an order on April 25, 2013, requiring Plaintiff to file an amended complaint, or in the alternative, to notify the court in writing that he was willing to proceed with the claims found cognizable by the court. (Doc. 14.) On May 31, 2013, Plaintiff filed the First Amended Complaint, which is now before the court for screening. (Doc. 16.)

## II. SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal 556 U.S. at 678. While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).

## III. SUMMARY OF FIRST AMENDED COMPLAINT

Plaintiff is in the custody of the California Department of Corrections and Rehabilitation (CDCR), presently incarcerated at Corcoran State Prison (CSP) in Corcoran, California, where the events at issue in the First Amended Complaint allegedly occurred. Plaintiff brings this civil rights complaint against defendants who are prison officials employed by the CDCR at CSP. Plaintiff names as defendants Correctional Officer (C/O) P. Patterson,

///

Sergeant (Sgt.) E. Molina, and Lieutenant (Lt.) G. A. Finley, Jr.  Plaintiff's factual allegations follow.

On September 16, 2009, at about 10:15 a.m., defendant C/O Patterson came to Plaintiff's cell, and in the presence of Plaintiff's cell mate Maurice Robinson [not a defendant] told Plaintiff that he had a disciplinary hearing, which he would not be allowed to attend unless he put on a jumpsuit.  Plaintiff asked C/O Patterson to show him something in writing stating he had to wear a jumpsuit, and Patterson became irate.  After a brief exchange of vulgarities with Plaintiff, Patterson told Plaintiff he was going to call Lt. Finley, and tell him that Plaintiff was refusing to wear a jumpsuit for his hearing.  Then C/O Patterson walked away.

When C/O Patterson returned to Plaintiff's cell, C/O G. Pinzon [not a defendant] was with him.  C/O Patterson told Plaintiff that he had spoken to Lt. Finley, who said to tell Plaintiff he could not attend the hearing without wearing a jumpsuit.  Plaintiff told C/O Patterson that he was going to put on a jumpsuit, so he could attend the disciplinary hearing.  Plaintiff also told Patterson that he was going to file a staff complaint against Patterson and Finley.  Patterson got angry again.  When Plaintiff put on the jumpsuit and walked to his cell door to be secured in restraints, Patterson used an angry tone and told Plaintiff to go to the back of the cell so he could cuff Robinson up.

After Patterson cuffed Robinson up, Plaintiff returned to the cell door to be secured in waist-chain restraints.  Patterson put the waist-chain cuffs on Plaintiff's right wrist extremely tight.  When Plaintiff told Patterson the cuffs were too tight, Patterson said to "shut the f--- up," then signaled for the control-booth officer to open the cell door.  (Amended Complaint (ACP), Doc. 16 at 4 ¶16.)

After being removed from the cell, Plaintiff again told Patterson the cuffs were too tight and asked him to loosen them.  He responded by telling Plaintiff that he "wasn't loosening nothing." (ACP at 4 ¶17.)  Plaintiff and Patterson again exchanged vulgarities.  Plaintiff heard C/O G. Pinzon yell, "Robinson, stop trying to assault me!"  Plaintiff looked over his right shoulder and saw Robinson's hands still secured behind his back and sticking out of the food/handcuff port, as if waiting to be uncuffed.  Plaintiff said to Pinzon, "Bitch, stop lying on

my celly.  You're just mad because he filed a staff complaint on you and C/O Trupp."  (ACP at 5 ¶18.)

Because Plaintiff made the comment to Pinzon, Patterson slammed Plaintiff into the bar-box and told him to "shut my black a-- mouth, before I get f---ed up real bad, for helping Robinson file complaints against staff."  (ACP at 5 ¶19.)  Plaintiff told Patterson that he was also going to write him up for slamming Plaintiff into the bar-box and threatening him for helping his cell mate file staff complaints against C/Os Pinzon and Trupp.  After another exchange of vulgarities, C/O Patterson escorted Plaintiff to the 4B2A rotunda area, where he was secured in a holding cell.

Plaintiff again asked Patterson to loosen up the cuffs, which had caused Plaintiff's right hand and wrist to swell up so much that it cut into his wrist and caused his hand to go numb.  Patterson refused.

When Lt. Finley entered the unit, Plaintiff immediately told him what happened and why.  Plaintiff asked Lt. Finley to do a "use of force" packet, which is mandatory under Administrative Bulletin 5103 and Corcoran's Operational Procedure no. 439 when an inmate makes allegations of excessive/unnecessary force.  (ACP at 5 ¶22.)  Lt. Finley told Plaintiff to hold on, and went into the 4B2R office, where he spoke to defendants C/O Patterson and Sgt. E. Molina for approximately ten minutes.

Lt. Finley came out of the office and told Plaintiff that neither he nor Sgt. Molina were going to do a "use of force" packet against C/O Patterson, but that he would loosen up the waist-chain cuffs but not remove them.  Lt. Finley also said he would have the LVN do a "medical report of injury or unusual occurrence" on form CDC-7219, which was never shown or given to Plaintiff.  (ACP at 6 ¶23.)  Lt. Finley also told Plaintiff that he and Sgt. Molina had instructed C/O Patterson to file a false serious Rules Violation Report (RVR) alleging that Plaintiff threatened to kill him, his wife, and his kids.

When Sgt. Molina and C/O Pinzon were returning Plaintiff to his cell, Plaintiff told Molina he was going to file a staff complaint against C/O Patterson for retaliation and excessive force, and a staff complaint against Molina and Finley for instructing Patterson to file

4

a false RVR against Plaintiff and for refusing to do a "use of force" packet against Patterson. Sgt. Molina said -- in a very loud tone of voice that could be heard by all the inmates on the tier, some who were high ranking gang members – "Shut the f--- up snitch, or you'll be put on f---ed up status like your celly." (ACP at 6 ¶26.)  They had been generating false chronos to inmates, identifying Plaintiff's cell mate as a child molester for the purpose of getting him stabbed.

Plaintiff requests monetary damages as relief.

## IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  "The requisite causal connection can be established not only by some kind of direct, personal participation in the deprivation, but also by setting in motion a series of acts by others which

///

the actors knows or reasonably should know would cause others to inflict the constitutional injury." Id. at 743-44.

      A.      **Excessive Force – Eighth Amendment Claim**

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

The court finds that Plaintiff states a cognizable claim for excessive force in violation of the Eighth Amendment against defendant C/O Patterson for putting waist-chain cuffs on Plaintiff's right wrist extremely tight and refusing to loosen them upon Plaintiff's requests,

causing Plaintiff's right hand and wrist to swell up so much that it cut into his wrist and caused his hand to go numb; and for slamming Plaintiff into the bar-box because Plaintiff made a comment to C/O Patterson. However, Plaintiff fails to state a claim for excessive force against any other defendant.

### B. Retaliation

As discussed by the Ninth Circuit in Watison v. Carter:

> "Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so. Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009). A retaliation claim has five elements. Id. First, the plaintiff must allege that the retaliated-against conduct is protected. The filing of an inmate grievance is protected conduct. Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005).
>
> Second, the plaintiff must claim the defendant took adverse action against the plaintiff. Id. at 567. The adverse action need not be an independent constitutional violation. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). "[T]he mere *threat* of harm can be an adverse action...." Brodheim, 584 F.3d at 1270.
>
> Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct. Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal. See Pratt, 65 F.3d at 808 ("timing can properly be considered as circumstantial evidence of retaliatory intent"); Murphy v. Lane, 833 F.2d 106, 108–09 (7th Cir. 1987).
>
> Fourth, the plaintiff must allege that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." Robinson, 408 F.3d at 568 (internal quotation marks and emphasis omitted). "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," Brodheim, 584 F.3d at 1269, that is "more than minimal," Robinson, 408 F.3d at 568 n.11. That the retaliatory conduct did not chill the plaintiff from suing the alleged retaliator does not defeat the retaliation claim at the motion to dismiss stage. Id. at 569.
>
> Fifth, the plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution...." Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir.1985). A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, id., or that they were "unnecessary to the maintenance of order in the institution," Franklin v. Murphy, 745 F.2d 1221, 1230 (9th Cir.1984)."

Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012).

Plaintiff alleges that defendant C/O Patterson slammed Plaintiff into the bar-box and told him to "shut my black a-- mouth, before I get f---ed up real bad, for helping Robinson file complaints against staff." Plaintiff also alleges that when Plaintiff told Sgt. Molina he was going to file a staff complaint against him, Sgt. Molina said -- in a very loud tone of voice that could be heard by all the inmates on the tier, some who were high ranking gang members – "Shut the f--- up snitch, or you'll be put on f---ed up status like your celly." Plaintiff alleges that officers had been generating false chronos to inmates, identifying Plaintiff's celly as a child molester for the purpose of getting him stabbed.

These allegations are sufficient to state cognizable claims for retaliation in violation of the First Amendment against defendants C/O Patterson and Sgt. Molina.

### C. Verbal Threats

Plaintiff alleges that Lt. Finley told Plaintiff that he and Sgt. Molina had instructed C/O Patterson to file a false serious Rules Violation Report (RVR) alleging that Plaintiff threatened to kill him, his wife, and his kids. Verbal harassment or abuse alone is not sufficient to state a claim under section 1983, Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987), and threats do not rise to the level of a constitutional violation, Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987). Without more, Plaintiff's allegations of verbal abuse fail to state a claim against defendants Finley or Molina.

### D. State Law Claims

Plaintiff alleges that defendants Lt. Finley and Sgt. Molina refused to do a "use of force" packet, which is mandatory under Administrative Bulletin 5103 and Corcoran's Operational Procedure no. 439 when an inmate makes allegations of excessive/unnecessary force. Plaintiff is informed that violation of state tort law, state regulations, rules and policies of the CDCR, or other state law is not sufficient to state a claim for relief under § 1983. To state a claim under § 1983, there must be a deprivation of federal constitutional or statutory rights. See Paul v. Davis, 424 U.S. 693 (1976). Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have

supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III [of the Constitution]," with specific exceptions. "Pendent jurisdiction over state claims exists when the federal claim is sufficiently substantial to confer federal jurisdiction, and there is a 'common nucleus of operative fact between the state and federal claims.' " Brady v. Brown, 51 F.3d 810, 816 (9th Cir. 1995) (quoting Gilder v. PGA Tour, Inc., 936 F.2d 417, 421 (9th Cir.1991)). "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." Acri v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir. 1997). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966).

In this instance, the Court has found cognizable § 1983 claims in the First Amended Complaint against defendants Patterson and Molina. Therefore, at this juncture, the Court shall exercise supplemental jurisdiction over Plaintiff's state law claims that form part of the same case or controversy as Plaintiff's cognizable federal claims.[1]

## V.   CONCLUSION AND ORDER

For the reasons set forth above, the court finds that Plaintiff states cognizable claims in the First Amended Complaint against defendant C/O Patterson for use of excessive force in violation of the Eighth Amendment; against defendants C/O Patterson and Sgt. Molina for retaliation in violation of the First Amendment; and against defendants Sgt. Molina and Lt. Finley, Jr., for failing to comply with state law. However, Plaintiff fails to state any other claims against defendants upon which relief may be granted under § 1983. Plaintiff shall be required to either file a Second Amended Complaint, or notify the Court of his willingness to proceed only on the cognizable claims against defendants Patterson, Molina, and Finley. Should Plaintiff choose to proceed only on the cognizable claims for retaliation, excessive

---

[1] At this stage of the proceedings, the Court makes no determination about the viability of Plaintiff's state law claims.

force, and violation of state law, the Court will begin the process to initiate service upon defendants Patterson, Molina, and Finley by the United States Marshal.

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend 'shall be freely given when justice so requires.'" The Court will provide Plaintiff with time to file an amended complaint curing the deficiencies identified above should he wish to do so. Plaintiff is granted leave to file a Second Amended Complaint within thirty days. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

Should Plaintiff choose to amend the complaint, the Second Amended Complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Iqbal, 556 U.S. at 678; Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 555). There is no *respondeat superior* liability, and each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 677. Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones, 297 F.3d at 934 (emphasis added).

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding new defendants for unrelated issues. In addition, Plaintiff should take care to include only those claims that have been administratively exhausted.

If Plaintiff decides to file an amended complaint, he is reminded that an amended complaint supercedes the original complaint, Lacey v. Maricopa County, 693 F. 3d 896, 907 n.1 (9th Cir. Aug., 29, 2012) (en banc), and it must be complete in itself without reference to the prior or superceded pleading. Local Rule 220. Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "Second Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;

2. Within **thirty (30) days** from the date of service of this order, Plaintiff shall either:

    (1) File a Second Amended Complaint curing the deficiencies identified in this order, or

    (2) Notify the Court in writing that he does not wish to file an amended complaint and is instead willing to proceed only on the claims against defendant C/O Patterson for use of excessive force; against defendants C/O Patterson and Sgt. Molina for retaliation; and against defendants Sgt. Molina and Lt. Finley, for failure to comply with state law;

3. Should Plaintiff choose to amend the complaint, Plaintiff shall caption the amended complaint "Second Amended Complaint" and refer to the case number 1:10-cv-01700-LJO-GSA-PC; and

4. If Plaintiff fails to comply with this order, this action will be dismissed for failure to comply with a court order.

IT IS SO ORDERED.

Dated:   **February 5, 2014**                             **/s/ Gary S. Austin**
                                                    UNITED STATES MAGISTRATE JUDGE