UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN E. FIELDS,<br><br>           Plaintiff,<br><br>      vs.<br><br>P. PATTERSON, et al.,<br><br>           Defendants. | 1:10-cv-01700-LJO-GSA-PC<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANT PATTERSON'S MOTION FOR PARTIAL SUMMARY JUDGMENT FOR FAILURE TO EXHAUST REMEDIES BE GRANTED (ECF No. 35.)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

## I.   BACKGROUND

Kevin E. Fields ("Plaintiff") is a prisoner proceeding pro se with this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed the Complaint commencing this action on September 17, 2010. (ECF No. 1.)  This action now proceeds with the First Amended Complaint filed on May 31, 2013, against Defendant Correctional Officer P. Patterson ("Defendant") for use of excessive force in violation of the Eighth Amendment.[1]  (ECF No. 16.)

---

[1] On February 12, 2015, the court dismissed Plaintiff's state law claims against defendants Molina and Finley and retaliation claims against defendants Patterson and Molina, on Plaintiff's Rule 41 motion to dismiss. (ECF No. 51.)  The court also dismissed defendants Molina and Finley from this action, based on the dismissal of all of the claims against them. (Id.)  Previously, on March 12, 2014, the Court dismissed all other claims and defendants from this action, under Rule 18(a) or for Plaintiff's failure to state a claim. (ECF No. 24.)

On September 10, 2014, defendants Molina, Patterson, and Finley filed a motion for partial summary judgment under Rule 56 on the grounds that the undisputed facts establish that Plaintiff failed to exhaust his available administrative remedies with respect to some of Plaintiff's claims against them in this action.  (ECF No. 39.)

On January 29, 2015, Plaintiff filed a notice of voluntary dismissal of all of the claims against defendants Molina and Finley, and the retaliation claim against defendant Patterson.  (ECF No. 48.)  As a result, this case now proceeds only on Plaintiff's excessive force claim against Defendant Patterson.  Moreover, Defendants' present motion for partial summary judgment is now moot as to all of Plaintiff's dismissed claims against defendants Molina, Finley, and Patterson.  On April 3, 2015, Plaintiff filed a notice of non-opposition to the motion for partial summary judgment.[2]  (ECF No. 62.)

Defendant Patterson's motion for partial summary judgment is now before the Court.

## II.    PLAINTIFF'S ALLEGATIONS

Plaintiff is in the custody of the California Department of Corrections and Rehabilitation (CDCR), presently incarcerated at Corcoran State Prison (CSP) in Corcoran, California, where the events at issue in the First Amended Complaint allegedly occurred.  Plaintiff's factual allegations follow.

On September 16, 2009, at about 10:15 a.m., defendant C/O Patterson came to Plaintiff's cell, and in the presence of Plaintiff's cell mate Maurice Robinson [not a defendant] told Plaintiff that he had a disciplinary hearing, which he would not be allowed to attend unless he put on a jumpsuit.  Plaintiff asked C/O Patterson to show him something in writing stating he had to wear a jumpsuit, and Patterson became irate.  After a brief exchange of vulgarities with Plaintiff, Patterson told Plaintiff he was going to call Lt. Finley, and tell him that Plaintiff was refusing to wear a jumpsuit for his hearing.  Then C/O Patterson walked away.

---

[2] Concurrently with their motion for summary judgment, Defendants served Plaintiff with the requisite notice of the requirements for opposing the motion.  Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998).  (ECF No. 35-1.)

When C/O Patterson returned to Plaintiff's cell, C/O G. Pinzon [not a defendant] was with him.  C/O Patterson told Plaintiff that he had spoken to Lt. Finley, who said to tell Plaintiff he could not attend the hearing without wearing a jumpsuit.  Plaintiff told C/O Patterson that he was going to put on a jumpsuit, so he could attend the disciplinary hearing.  Plaintiff also told Patterson that he was going to file a staff complaint against Patterson and Finley.  Patterson got angry again.  When Plaintiff put on the jumpsuit and walked to his cell door to be secured in restraints, Patterson used an angry tone and told Plaintiff to go to the back of the cell so he could cuff Robinson up.

After Patterson cuffed Robinson up, Plaintiff returned to the cell door to be secured in waist-chain restraints.  Patterson put the waist-chain cuffs on Plaintiff's right wrist extremely tight.  When Plaintiff told Patterson the cuffs were too tight, Patterson said to "shut the f--- up," then signaled for the control-booth officer to open the cell door.  (Amended Complaint (ACP), ECF  No. 16 at 4 ¶16.)

After being removed from the cell, Plaintiff again told Patterson the cuffs were too tight and asked him to loosen them.  He responded by telling Plaintiff that he "wasn't loosening nothing."  (ACP, ECF No. 16 at 4 ¶17.)  Plaintiff and Patterson again exchanged vulgarities. Plaintiff heard C/O G. Pinzon yell, "Robinson, stop trying to assault me!"  Plaintiff looked over his right shoulder and saw Robinson's hands still secured behind his back and sticking out of the food/handcuff port, as if waiting to be uncuffed.  Plaintiff said to Pinzon, "Bitch, stop lying on my celly.  You're just mad because he filed a staff complaint on you and C/O Trupp." (ACP at 5 ¶18.)

Because Plaintiff made the comment to Pinzon, Patterson slammed Plaintiff into the bar-box and told him to "shut my black a-- mouth, before I get f---ed up real bad, for helping Robinson file complaints against staff."  (ACP at 5 ¶19.)  Plaintiff told Patterson that he was also going to write him up for slamming Plaintiff into the bar-box and threatening him for helping his cell mate file staff complaints against C/Os Pinzon and Trupp.  After another exchange of vulgarities, C/O Patterson escorted Plaintiff to the 4B2A rotunda area, where he was secured in a holding cell.

Plaintiff again asked Patterson to loosen up the cuffs, which had caused Plaintiff's right hand and wrist to swell up so much that it cut into his wrist and caused his hand to go numb. Patterson refused.

When Lt. Finley entered the unit, Plaintiff immediately told him what happened and why. Plaintiff asked Lt. Finley to do a "use of force" packet, which is mandatory under Administrative Bulletin 5103 and Corcoran's Operational Procedure no. 439 when an inmate makes allegations of excessive/unnecessary force. (ACP at 5 ¶22.) Lt. Finley told Plaintiff to hold on, and went into the 4B2R office, where he spoke to defendants C/O Patterson and Sgt. E. Molina for approximately ten minutes.

Lt. Finley came out of the office and told Plaintiff that neither he nor Sgt. Molina were going to do a "use of force" packet against C/O Patterson, but that he would loosen up the waist-chain cuffs but not remove them. Lt. Finley also said he would have the LVN do a "medical report of injury or unusual occurrence" on form CDC-7219, which was never shown or given to Plaintiff. (ACP at 6 ¶23.) Lt. Finley also told Plaintiff that he and Sgt. Molina had instructed C/O Patterson to file a false serious Rules Violation Report (RVR) alleging that Plaintiff threatened to kill him, his wife, and his kids.

When Sgt. Molina and C/O Pinzon were returning Plaintiff to his cell, Plaintiff told Molina he was going to file a staff complaint against C/O Patterson for retaliation and excessive force, and a staff complaint against Molina and Finley for instructing Patterson to file a false RVR against Plaintiff and for refusing to do a "use of force" packet against Patterson. Sgt. Molina said -- in a very loud tone of voice that could be heard by all the inmates on the tier, some who were high ranking gang members – "Shut the f--- up snitch, or you'll be put on f---ed up status like your celly." (ACP at 6 ¶26.) They had been generating false chronos to inmates, identifying Plaintiff's cell mate as a child molester for the purpose of getting him stabbed.

///

///

///

### III. LEGAL STANDARDS

#### A. Statutory Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act of 1995 (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners are required to exhaust the available administrative remedies prior to filing suit. Jones v. Bock, 549 U.S. 199, 211, 127 S.Ct. 910, 918-19 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741, 121 S.Ct. 1819 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 993 (2002).

An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement. Woodford v. Ngo, 548 U.S. 81, 90, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368 (2006). When an inmate's administrative grievance is improperly rejected on procedural grounds, however, exhaustion may be excused as "effectively unavailable." Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010); see also Nunez v. Duncan, 591 F.3d 1217, 1224–26 (9th Cir. 2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable"); Ward v. Chavez, 678 F.3d 1042, 1044-45 (9th Cir. 2012) (exhaustion excused where futile); Brown v. Valoff, 422 F.3d 926, 940 (9th Cir. 2005) (plaintiff not required to proceed to third level where appeal granted at second level and no further relief was available).

#### B. California Department of Corrections and Rehabilitation (CDCR) Administrative Grievance System

The Court takes judicial notice of the fact that the State of California provides its prisoners and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal.Code Regs.

///

tit. 15 § 3084.1(a). The process is initiated by submitting a CDCR Form 602. Id. at § 3084.2(a).

At the time of the events giving rise to the present action, California prisoners were required to submit appeals within fifteen working days of the event being appealed, and the process is initiated by submission of the appeal to the informal level, or in some circumstances, the first formal level. Id. at §§ 3084.5, 3084.6(c) (2009). Four levels of appeal were involved, including the informal level, first formal level, second formal level, and third formal level. Id. at § 3084.5 (2009). A final decision at the third level[3] of review satisfies the exhaustion requirement under 42 U.S.C. § 1997e(a). Id. at § 3084.5(d); see Lira v. Herrera, 427 F.3d 1164, 1166 (9th Cir. 2005).

In order to satisfy § 1997e(a), California state prisoners are required to use this process to exhaust their claims prior to filing suit. Woodford, 548 U.S. at 85 (2006); McKinney, 311 F.3d. at 1199-1201.

### C. Motion for Summary Judgment for Failure to Exhaust

The failure to exhaust in compliance with section 1997e(a) is an affirmative defense under which Defendants have the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). On April 3, 2014, the United States Court of Appeals for the Ninth Circuit issued a decision overruling Wyatt with respect to the proper procedural device for raising the affirmative defense of exhaustion under § 1997e(a). Albino v. Baca ("Albino II"), 747 F.3d 1162, 1168–69 (9th Cir. 2014) (en banc). Following the decision in Albino II, defendants may raise exhaustion deficiencies as an affirmative defense under § 1997e(a) in either (1) a motion to dismiss pursuant to Rule 12(b)(6)[4] or (2) a motion for summary judgment under Rule 56. Id. If the Court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without

---

[3] The third level is sometimes known as the Director's level.

[4] Motions to dismiss under Rule 12(b)(6) are only appropriate "[i]n the rare event a failure to exhaust is clear on the face of the complaint." Albino II, 747 F.3d at 1162.

prejudice of the portions of the complaint barred by § 1997e(e).  Jones, 549 U.S. at 223–24; Lira v. Herrrera, 427 F.3d 1164, 1175–76 (9th Cir. 2005).

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Albino II, 747 F.3d at 1169 ("If there is a genuine dispute about material facts, summary judgment will not be granted.")  A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  The Court may consider other materials in the record not cited to by the parties, but is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).  In judging the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011).  The Court must liberally construe Plaintiff's filings because he is a pro se prisoner. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

In a summary judgment motion for failure to exhaust administrative remedies, the defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino II, 747 F.3d at 1172.  If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id.  The ultimate burden of proof remains with defendants, however. Id.  "If material facts are disputed,

///

summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id. at 1166.

IV. **DEFENDANTS' STATEMENT OF UNDISPUTED FACTS (DUF)[5]**

### BACKGROUND

1. Plaintiff Kevin E. Fields is a state prisoner in the custody of the California Department of Corrections and Rehabilitation (CDCR). (Am. Compl., ECF No. 16 at ¶ 4.)

2. At all times relevant to this lawsuit, Plaintiff was incarcerated in the Security Housing Unit at California State Prison, Corcoran (CSP-Cor) in Corcoran, California. (Id.)

3. Also at all relevant times to this lawsuit, Defendant Correctional Officer Patterson, Defendant Correctional Sergeant Molina, and Defendant Correctional Lieutenant Finley were employed by CDCR at CSP-Cor. (Am. Compl., ECF No. 16 at ¶ 5.)

### PLAINTIFF'S PRISONER GRIEVANCES

4. The Office of Appeals (OOA) provides the third and final formal level of administrative review of non-health care appeals filed by inmates and parolees of the State of California. Prior to January 28, 2011, this final level of review was known as the Director's Level, however, it is now officially entitled the Third Level. (R. Briggs Decl. ¶¶ 1-2.)

5. OOA maintains the Inmate/Parolee Appeals Tracking System, which is an electronic record of each inmate grievance that has proceeded through the Third Level of Review. When a grievance is received by OOA, it is assigned a third level tracking number—whether it is screened out or accepted—and entered into the computer tracking system. The computer system for tracking accepted grievances was commenced in 1993. The following information is kept in the

---

[5] These facts are undisputed only for purposes of this motion for summary judgment.

|   |   |   |
|---|---|---|
| 1 |  | electronic record: grievance log number, the category (nature/subject) of the |
| 2 |  | grievance, institutional log numbers, inmate's name and CDCR number, the |
| 3 |  | institution where the grievance arose, the date that the grievance is received and |
| 4 |  | closed, and final disposition of the grievance.  The electronic record also shows |
| 5 |  | whether a grievance was screened out and the reason it was screened out.  (R. |
| 6 |  | Briggs Decl. ¶ 3.) |
| 7 | 6. | The OOA also keeps a copy of grievances and any response to the grievance |
| 8 |  | prepared by OOA.  (R. Briggs Decl. ¶ 4.) |
| 9 | 7. | CDCR provides its prisoners and paroles with a comprehensive appeals process |
| 10 |  | in which they may administratively appeal a "decision, action, condition, or |
| 11 |  | policy which they can demonstrate as having a material adverse effect on their |
| 12 |  | welfare" made by any officer of CDCR.  (R. Briggs Decl. ¶ 5.) |
| 13 | 8. | Prior to January 28, 2011, CDCR's inmate appeal process had four levels of |
| 14 |  | appeal:  (1) informal resolution; (2) formal appeal; (3) second-level appeal to the |
| 15 |  | institution head or designee; and (4) third-level appeal to the Chief of the IAB. |
| 16 |  | In addition to numerous changes in the new regulations implemented January |
| 17 |  | 28, 2011, inmates are no longer required to seek resolution at the informal level. |
| 18 |  | (R. Briggs Decl. ¶ 6.) |
| 19 | 9. | OOA provides the third and final formal level of administrative review of all |
| 20 |  | appeals filed by inmates and parolees of the State of California that do not |
| 21 |  | concern dental, medical, or mental health care.  (R. Briggs Decl. ¶ 7.) |
| 22 | 10. | OOA conducted a search of its records for non-healthcare related appeals |
| 23 |  | submitted by Kevin Fields (P-83425).  (R. Briggs Decl. ¶¶ 10-9.) |
| 24 | 11. | Information maintained at OOA shows that between September 16, 2009, when |
| 25 |  | the alleged incidents at issue took place, and September 17, 2010, when this |
| 26 |  | lawsuit was initiated, Plaintiff submitted eight appeals that were accepted and |
| 27 |  | adjudicated at the Director's Level of Review.  (R. Briggs Decl. ¶ 9.) |

12. A review of Plaintiff's exhausted grievances reveals that only the grievances bearing the log numbers COR-09-03448 and COR-09-04185 involve incidents at CSP-Cor that took place on September 16, 2009. (R. Briggs Decl. ¶ 10.)

13. In grievance log number COR-09-03448, Plaintiff alleged Officer Patterson utilized unnecessary/excessive force against him by placing handcuffs on him so tight that they cut through his skin and caused nerve damage. (R. Briggs Decl., Ex. B.)

14. In grievance log number COR-09-03448, Plaintiff also alleged Lieutenant Finley and Sergeant Molina refused his request to generate a use of force packet. (R. Briggs Decl., Ex. B.)

15. In grievance log number COR-09-04185, Plaintiff alleged Officer Patterson generated a CDCR Form 115 Rules Violation Report against Plaintiff in retaliation for Plaintiff filing a staff complaint against Officer Patterson. (R. Briggs Decl., Ex. E.)

16. Plaintiff did not exhaust any other non-healthcare related grievances at the first or second levels of review between September 16, 2009 and September 17, 2010. (Goree Decl. ¶ 5.)

## PLAINTIFF'S GOVERNMENT CLAIMS

17. On July 25, 2014, staff at the Office of the Attorney General inquired with the State of California's Victim Compensation and Government Claims Board (Board) as to whether Plaintiff submitted any claims between September 16, 2009, and March 16, 2010. (Goodwin Decl. ¶ 2.)

18. On August 27, 2014, the Office of the Attorney General received a custodian-of-records declaration from G. Brooks, the custodian of records for the Board. Attached to this declaration is a certified copy of Plaintiff's government claim, bearing log number G586271, which was submitted on October 19, 2009. (Goodwin Decl. ¶ 3; Ex. I.)

19. Plaintiff's claim number G586271 regarded incidents between October 12, 2009 and October 16, 2009, during which Plaintiff alleges contaminated sewer water drained into his cell. Plaintiff further alleges it contaminated Plaintiff's drinking water, that prison officials failed to move Plaintiff, and prison officials also failed to take reasonable steps to fix the problem. (Goodwin Decl. Ex. I.)

20. The Board mailed a letter to Plaintiff on January 28, 2010, rejecting Plaintiff's claim. (Goodwin Decl. Ex. I.)

## V. DEFENDANT PATTERSON'S MOTION

Defendant Patterson ("Defendant") acknowledges that Plaintiff exhausted his administrative remedies concerning his allegation that Defendant applied a handcuff on Plaintiff's wrist too tight. However, Defendant argues that Plaintiff failed to exhaust his administrative remedies concerning his allegation that Defendant slammed him into a "bar box," because between September 16, 2009 (the date of the incidents alleged) and September 17, 2010 (when this lawsuit was initiated), Plaintiff submitted eight non-healthcare appeals that were accepted and adjudicated at the Director's Level of review, and none of them alleged that Defendant slammed Plaintiff into a "bar box" on September 16, 2009. (DUF 10-11.)

Only two of Plaintiff's eight appeals concern incidents that took place on September 16, 2009 at CSP: log numbers COR-09-03448 and COR-09-04815. (DUF 12.) In grievance number COR-09-03448, Plaintiff alleged that Defendant used excessive force against him by placing handcuffs on him too tight. (DUF 13.) In grievance log number COR-09-04815, Plaintiff alleged that Defendant generated a CDCR Form 115 RVR against Plaintiff in retaliation for Plaintiff filing a staff complaint against Defendant. (DUF 15.) Plaintiff did not exhaust any other non-healthcare grievances at the first or second levels of review between September 16, 2009 and September 17, 2009. (DUF 16.)

Based on an examination of Defendant's Undisputed Facts and evidence, the court finds that Defendant has met his burden of showing evidence that there was an administrative remedy available to Plaintiff, but that Plaintiff did not exhaust the appeals process for his excessive force claim against Defendant Patterson for slamming Plaintiff into a "bar box" on

September 16, 2009.  Therefore, the burden shifts to Plaintiff to come forward with evidence showing that he did exhaust his available remedies concerning that allegation, or that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him.

Plaintiff has filed a notice of non-opposition to Defendant's motion for partial summary judgment.  (ECF No. 62.)

## VI. ANALYSIS

This case now proceeds on one claim:  for excessive force, against Defendant C/O P. Patterson, for applying a handcuff on Plaintiff's wrist too tight, and for slamming Plaintiff into a "bar box" on September 16, 2009.

Defendant acknowledges that Plaintiff exhausted his administrative remedies concerning the allegation that Defendant applied a handcuff too tight, and Plaintiff has filed notice that he does not oppose Defendant's motion for partial summary judgment concerning the allegation that Defendant slammed him into a "bar box."  Therefore, Defendant's motion for partial summary judgment should be granted.

## VII. CONCLUSION AND RECOMMENDATIONS

Defendant Patterson has met his burden of demonstrating that under the undisputed facts, Plaintiff failed to exhaust his remedies prior to filing suit, in compliance with § 1997e(a), concerning his allegation that Defendant Patterson slammed him into a "bar box" on September 16, 2009.  Defendant has shown an absence in the official records of any evidence that Plaintiff filed an inmate appeal pursuant to Title 15 of the California Code of Regulations § 3084.1, et seq., concerning Plaintiff's allegation in the complaint that defendant Patterson slammed him into a "bar box."  Plaintiff has filed notice that he does not oppose Defendant's motion.

Therefore, **IT IS HEREBY RECOMMENDED that:**

1. Defendant Patterson's motion for partial summary judgment, filed on September 10, 2014, be GRANTED;
2. Plaintiff's claim that Defendant Patterson slammed him into a "bar box" be DISMISSED without prejudice; and

3. The remainder of the motion for summary judgment be DENIED as moot.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  **Within thirty (30) days** after being served with these findings and recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 19, 2015**                           **/s/ Gary S. Austin**
                                                              UNITED STATES MAGISTRATE JUDGE

